FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y

★ MAY 0 2 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IMRAN AHMED, on behalf of himself and all others similarly situated, | ) ) ) CV11-2133 |
| Plaintiff, | ) CLASS ACTION COMPLAINT |
| | ) JURY TRIAL DEMANDED |
| v. | ) SUMMONS ISSUED |
| SONY COMPUTER ENTERTAINMENT OF AMERICA, LLC and SONY NETWORK ENTERTAINMENT INTERNATIONAL LLC, | ) ) ) ) WEXLER, J |
| Defendants. | ) ) BOYLE M.J |

### CLASS ACTION COMPLAINT

COMES NOW Plaintiff Imran Ahmed ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys of record, and in support of Plaintiff's Class Action Complaint against Defendants Sony Computer Entertainment of America LLC ("SCEA") and Sony Network Entertainment International LLC ("SNEI") (collectively, "Sony") states as follows:

### INTRODUCTION

1. Sony designs, manufactures, markets, advertises and sells a video game console called the PlayStation, which is one of the most popular gaming consoles in the world.

1

2. To allow users online access through the PlayStation, Sony provides the PlayStation Network (the "PSN") and Qriocity services. Users are required to submit their credit card information to gain access to certain features of the PSN and the Qriocity services.

3. Between April 17, 2011 and April 19, 2011, account information for members using Sony's PSN and the Qriocity service was compromised, including that of Plaintiff's, as a result of an unauthorized intrusion into Sony's network, resulting in the intruders gaining access to users' sensitive personal information, including possibly credit card information.

4. Sony became aware of the breach no later than April 19, 2011 but informed users of PSN and the Qriocity service on April 26, 2011, a week later, that their personal information, including their credit card numbers, may have been stolen.

5. This intrusion would not have occurred had Sony maintained adequate computer data security to protect sensitive personal information, including credit card numbers, of the users of the PSN and Qriocity services. Moreover, Sony failed to disclose to users of PSN and the Qriocity service, including Plaintiff, the fact that users' personal information, including their credit card information, was not secure and could possibly be accessed by others without permission

6. Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons throughout the United States and its territories whose private information was negligently, deliberately, and/or recklessly allowed to be stolen from Sony, in

violation of the New York Deceptive Trade Practices Laws (N.Y. Gen. Bus. Law § 349, *et seq.*) as well as other common law causes of action.

7. Plaintiff seeks damages suffered as a result of Sony's practices, including but not limited to statutory damages, compensatory damages, and injunctive relief.

## PARTIES AND JURISDICTION

8. Plaintiff Imran Ahmed is an individual and a citizen of New York and resides in Westbury, New York. Plaintiff purchased Sony's PlayStation video game console on October 26, 2007 from Amazon.com for the purchase price of $499.99. Moreover, Plaintiff also provided Sony with his credit card information in connection with PSN on several occasions including, on March 3, 2010, Plaintiff purchase a video game through PSN providing his American Express credit card to Sony to make the purchase. Plaintiff's personal information relating to his use of Sony's PSN and/or Qriocity service, as set forth in detail below, was compromised as a result of the breach described herein. Since being informed of the breach of Sony's network, Plaintiff has contacted the three major credit card reporting companies (TransUnion, Equifax and Experian) to place a 90-day fraud alert on his accounts.

9. Defendant Sony Computer Entertainment America LLC is a corporation organized and existing under the laws of the state of Delaware. It maintains its headquarters in Foster City, California. SCEA conducts business in this jurisdiction and in this judicial district by advertising and through the distributors and retailers that deliver and sell its product to customers.

10. Defendant Sony Network Entertainment International LLC is a corporation organized and existing under the laws of the state of Delaware. It maintains its headquarters in Los Angeles, California. SNEI conducts business in this jurisdiction and in this judicial district by advertising and through the distributors and retailers that deliver and sell its product to customers.

11. The Court has jurisdiction over the federal claim herein pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims herein under 28 U.S.C. § 1367. Further, the Court also has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $ 5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Sony. See 28 U.S.C. § 1332(d)(2)(A).

12. Venue properly lies in the Judicial District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the acts giving rise to Plaintiff's claims occurred in this Judicial District and moreover, Plaintiff resides in this Judicial District.

## FACTUAL BACKGROUND

13. Sony's PlayStation brand, first introduced in 1994, consists of a total of three consoles: PlayStation, PlayStation 2, and PlayStation 3 (collectively referred to as "PlayStation"). The brand also consists of a media center, an online service, a line of controllers, a handheld device and multiple magazines.

14. The first console in the PlayStation series was the first video game console to ship 100 million units while its successor, PlayStation 2, is the best-selling

console of all time having sold over 150 million units. Sony's current console, PlayStation 3, has sold over 48 million consoles worldwide.

15. Sony also provides PlayStation users access to its global network, PSN, as well as the Qriocity service, which allow users online access using their PlayStation consoles to play games with other members as well as purchase games, music, movies, and other media. While providing a credit card is not mandatory to become a PSN or Qriocity member, it is required for a user to make purchases through these services.

16. On PlayStation's website, Sony promotes PSN by stating

> Get the best in digital entertainment at PlayStation®Store. With an ever-expanding library of exclusive games, hit movies and TV shows, and original programs, PlayStation®Store lets you download the best new content straight to your PS3™ or PSP® system. Get all your favorites plus awesome new shows, movies, and games. PlayStation®Store is ready to deliver.[1]

17. On April 22, 2011, after Sony's PSN and Qriocity services had been down for a few days, SCEA's Sr. Director of Corporate Communications, Patrick Seybold, released the following statement:

> "An external intrusion on our system has affected our PlayStation Network and Qriocity services. In order to conduct a thorough investigation and to verify the smooth and secure operation of our network services going forward, we turned off PlayStation Network & Qriocity services on the evening of Wednesday, April 20th. Providing quality entertainment services to our customers and partners is our utmost priority. We are doing all we can to resolve this situation quickly, and we once again thank you for your patience. We will continue to update you promptly as we have additional information to share."[2]

---

[1] http://us.playstation.com/psn/.

[2] http://blog.us.playstation.com/2011/04/22/update-on-playstation-network-qriocity-services/.

18. Sony gave no indication to users that the "external intrusion" compromised users' personal information, including name, address (city, state, zip), country, email address, birthdate, PlayStation Network/Qriocity password and login, handle/PSN online ID, as well credit card information (collectively, "Personal Information").

19. On April 26, 2011, six days after shutting down the PSN and Qriocity services, Sony sent an email to the users of the PSN and Qriocity services where they finally acknowledged that they had "discovered that between April 17 and April 19, 2011, certain PlayStation Network and Qriocity service user account information was compromised in connection with an illegal and unauthorized intrusion into our network."[3]

20. Sony further stated that:

> "Although we are still investigating the details of this incident, we believe that an unauthorized person has obtained the following information that you provided: name, address (city, state, zip), country, email address, birthdate, PlayStation Network/Qriocity password and login, and handle/PSN online ID. It is also possible that your profile data, including purchase history and billing address (city, state, zip), and your PlayStation Network/Qriocity password security answers may have been obtained. If you have authorized a sub-account for your dependent, the same data with respect to your dependent may have been obtained. While there is no evidence at this time that credit card data was taken, we cannot rule out the possibility. If you have provided your credit card data through PlayStation Network or Qriocity, out of an abundance of caution we are advising you that your credit card number (excluding security code) and expiration date may have been obtained."[4]

21. The intrusion, considered one of the greatest security breaches in history, left over 77 million accounts across the world compromised.

---

[3] http://blog.us.playstation.com/2011/04/26/update-on-playstation-network-and-qriocity/.

[4] *Id.*

6

22. Fred H. Cate, a cybersecurity expert and the director of Indiana University's Center for Applied Cybersecurity Research, stated that:

> "This is one of the biggest data heists we have ever seen, both in terms of the number of people affected and the wide variety of data that appear to have been compromised. Even if it turns out credit card data wasn't stolen, the consequences of this attack are huge...the reason is that the stolen data included passwords and password reset questions. Password data is very revealing, many people reuse the same passwords and reset questions across most, if not all, sites they use. So whoever stole or has access to the PlayStation data may very well be able to access PlayStation users' other accounts -- including banking, credit card, online retail, email, and corporate network accounts. In fact, by using the password reset information, the thieves can reset account passwords, thereby blocking individuals' access to their own accounts and information."[5]

23. On April 28, 2011, in an article entitled "Experts: PlayStation Breach One Of The Largest Ever," USA Today reported:

> Compared to other major incidents -- such as the 2009 breach of Heartland Payment Systems, which processed 100 million card transactions a month for 175,000 merchants, and the 2007 TJX Companies breach, which involved 94 million credit card accounts -- the PSN event is at least "equally damaging," says Mandeep Khera of application security firm Cenzic..
>
> He joined the chorus of critics questioning the response by Sony, which says it learned of the breach on April 19, but did not inform users of the risks to their personal and financial data until [April 26, 2011].
>
> The lag of more than a week could have given hackers time to exploit customer data, Khera says. "As soon as you know there is a breach it is in best interest of the consumers to let them all know so that they can take precautions," Khera says.[6]

---

[5] http://newsinfo.iu.edu/news/page/normal/18351.html.

[6] http://www.usatoday.com/tech/gaming/2011-04-27-playstation-hack_n.htm#.

7

24. Also on April 28, 2011, the New York Times reported:

> Kevin Stevens, senior threat researcher at the security firm Trend Micro, said he had seen talk of the database on several hacker forums, including indications that the Sony hackers were hoping to sell the credit card list for upwards of $100,000. Mr. Stevens said one forum member told him the hackers had even offered to sell the data back to Sony but did not receive a response from the company.
>
> \*\*\*
>
> "Sony is saying the credit cards were encrypted, but we are hearing that the hackers made it into the main database, which would have given them access to everything, including credit card numbers," said Mathew Solnik, a security consultant with iSEC Partners who frequents hacker forums to track new hacks and vulnerabilities that could affect his clients. Mr. Solnik said that people on the forums had details about the servers used by Sony, which may indicate that they had direct knowledge of the attack.
>
> Mr. Solnik said researchers believe that the hackers gained access to Sony's database by hacking the PS3 console and from there infiltrating the company's servers.[7]

25. On April 29, 2011, the House of Representatives Subcommittee on Commerce, Manufacturing and Trade (the "Subcommittee") sent a letter to Kazuo Hirai, Chairman of SEIA, asking for information regarding the breach on Sony's network so the issue can be addressed at a hearing scheduled for May 4, 2011.[8]

26. The Subcommittee stated that "[g]iven the amount and nature of the personal information known to have been taken, the potential harm that could be caused if credit card information was also taken would be quite significant."[9]

---

[7] http://bits.blogs.nytimes.com/2011/04/28/hackers-claim-to-have-playstation-users-card-data/?ref=technology.

[8] http://republicans.energycommerce.house.gov/Media/file/Letters/112th/042911sony.pdf.

[9] *Id.*

27. Sony has created a webpage entitled "Q&A #1 for PlayStation Network and Qriocity Services"[10] where they attempted to address some of the most common questions they had received from outraged customers. On the webpage, Sony states:

> **Q: Was my credit card data taken?**
> A: While all credit card information stored in our systems is encrypted and there is no evidence at this time that credit card data was taken, we cannot rule out the possibility. If you have provided your credit card data through PlayStation Network or Qriocity, out of an abundance of caution we are advising you that your credit card number (excluding security code) and expiration date may have been obtained. Keep in mind, however that your credit card security code (sometimes called a CVC or CSC number) has not been obtained because we never requested it from anyone who has joined the PlayStation Network or Qriocity, and is therefore not stored anywhere in our system.
>
> \*\*\*
>
> **Q: What steps is Sony taking to protect my personal data in the future?**
> A: We've taken several immediate steps to add protections for your personal data. First, we temporarily turned off PlayStation Network and Qriocity services and, second, we are enhancing security and strengthening our network infrastructure. Moving forward, we are initiating several measures that will significantly enhance all aspects of PlayStation Network's security and your personal data, including moving our network infrastructure and data center to a new, more secure location, which is already underway. We will provide additional information on these measures shortly.

## CLASS ACTION ALLEGATIONS

28. This action is brought on behalf of Plaintiff, individually and as a class action, on behalf of all persons throughout the United States and its territories whose Personal Information was negligently, deliberately, and/or recklessly allowed to

---

[10] http://blog.us.playstation.com/2011/04/27/qa-1-for-playstation-network-and-qriocity-services/.

be stolen from Sony in connection with the use of PSN and/or the Qriocity service ("the Class" or "Class Members"). The Class does not include Sony, its officers, directors, agents or employees.

29. The Class is composed of thousands of customers of PSN and the Qriocity service who had submitted their Personal Information to Sony, the joinder of whom in one action is impracticable. Disposition of the claims in a class action will provide substantial benefits to both the parties and the Court.

30. The rights of each Class Member were violated in a similar manner based upon Sony's uniform actions.

31. Questions of law and fact common to the Class predominate over questions which may affect individual Class Members, including, *inter alia*:

   a. Whether Sony's conduct was deliberate and/or reckless;

   b. Whether Sony's conduct was negligent;

   c. Whether Sony was negligent in collecting and storing personal information of customers;

   d. Whether Sony took reasonable measures to safeguard customer's personal information;

   e. Whether Sony owed a duty to exercise reasonable care in storing customer's personal information by storing that information on its computer systems and its physical possession;

   f. Whether Sony breached a duty by failing to keep Plaintiff's and Class Members' personal information secure;

      g. Whether Sony was negligent in failing to keep Plaintiff's and Class Members' personal information secure;

      h. Whether Plaintiff and Class Members have sustained damages, and if so, what is the proper measure of those damages;

      i. Whether statutory damages are proper in this matter;

      j. Whether injunctive relief is appropriate in this matter; and

      k. Whether Sony's conduct constitutes a violation of the New York Deceptive Practices Trade Act.

32. Plaintiff will fairly and adequately represent and protect the interest of the Class in that he has no interest that is antagonistic to or that irreconcilably conflicts with those of other Class Members.

33. Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

34. A class action is superior to all other available methods for the fair and efficient adjudication of Plaintiff's and Class Members' claims.  Plaintiff and the Class members have suffered irreparable harm as a result of Sony's deceptive, intentional, reckless, negligent and unlawful conduct.  The damages suffered by individual Class members may be relatively small, and thus few, if any individual Class members can afford to seek legal redress on an individual basis for the wrong complained of herein.  Absent a class action, Plaintiff and Class Members will continue to suffer losses as a result of Sony's unlawful and negligent conduct.

## COUNT I
## VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES LAWS
## (N.Y. Gen. Bus. Law § 349 *et seq.*)

35. Plaintiff re-alleges the above numbered paragraphs as if fully set forth herein.

36. Sony's actions and failures to notify Plaintiffs and Class members of the laws constitute deceptive acts and practices and violate the New York Deceptive Trade Practices Laws (N.Y. Gen. Bus. Law § 349, *et seq.*).

37. Sony materially misled Plaintiff and Class members by failing to disclose it did not have adequate data security procedures in place to protect their Personal Information.

38. Sony materially misled Plaintiff and Class members by failing to timely notify Plaintiff and Class member and/or concealing from Plaintiff and Class members that their Personal Information had been compromised.

39. Sony's acts in failing to timely notify users and failing to keep users' Personal Information safeguarded occurred within the State of New York.

40. As a result of Sony's deceptive acts and practices, Plaintiff and Class members have been injured.

41. Such violations entitle Plaintiff and members of the Class to damages and injunctive relief.

## COUNT II
## NEGLIGENCE

42. Plaintiff re-alleges the above paragraphs as if fully set forth herein.

43. Sony came into possession of Plaintiff's and Class Members' Personal Information and had a duty to exercise reasonable care in safeguarding and protecting such information from being compromised and/or stolen.

44. Sony had a duty to timely disclose the fact that Plaintiff and the Class Members' Personal Information within its possession had been, or was reasonably believed to have been, compromised.

45. Sony had a duty to protect Plaintiff's Personal Information within its possession.

46. Further, Sony had a duty to hire and supervise trustworthy employees as well as to have procedures in place to detect and prevent the theft or dissemination of Plaintiff's Personal Information. This breach of security and unauthorized access was reasonably foreseeable to Sony.

47. Sony, through their acts and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to maintain reasonable procedures designed to protect against unauthorized access while transferring the Personal Information within its possession.

48. Sony, through their actions and/or omissions, breached their duty to timely disclose the fact that Plaintiff's and the Class Members' Personal Information within thier possession had been, or was reasonably believed to have been, compromised.

49. But for Sony's negligent and wrongful breach of its duties owed to Plaintiff and Class, their Personal Information would not have been compromised.

50. Plaintiff's and Class Members' Personal Information was compromised, viewed, and/or stolen as the proximate result of Sony failing to exercise reasonable care in

safeguarding such information by adopting, implementing, or maintaining appropriate security measures to protect and safeguard the private, non-public, personal and financial information within its possession.

51. Plaintiff and the Class suffered actual damages including, but not limited to: expenses for credit card monitoring; anxiety; emotional distress; loss of privacy; and other economic and non-economic harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully prays that the Court enter and Order:

a. Certifying this matter as a class action with Plaintiff as Class Representative and designating Plaintiff's counsel as class counsel;

b. Declaring that Sony's failure to maintain reasonable procedures designed to protect against unauthorized access while storing the Personal Information constitutes an unfair or deceptive trade practice and enjoining such conduct;

c. Finding that Sony breached its contract to safeguard and protect the Plaintiff's and Class Members' Personal Information stored on its computer systems and in its physical possession;

d. Finding that Sony was negligent in protecting the Plaintiff's and Class' Personal Information in its physical possession;

e. Requiring Sony to compensate Class Members for all damages that result from the unauthorized release of their Private Information;

f. Enjoining Sony from actions which place customers at risk of future security breaches;

g. Awarding damages to Plaintiff and the Class under the common law theories alleged;

h. Requiring Sony to pay Plaintiff's and Class' reasonable attorneys' fee and costs of litigation;

i. Requiring Sony to make Plaintiff and Class Members whole;

j. Requiring Sony to pay treble damages; and

k. Providing for such other legal and/or equitable relief as justice requires.

## JURY DEMAND

Plaintiff, on behalf of himself and the putative class, demands a trial by jury on all issues so triable.

Dated: May 2, 2011

Respectfully Submitted,

Joe R. Whatley, Jr.
Patrick J. Sheehan
Shujah A. Awan
WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077